**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **2 HART INVESTMENTS LLC** § | | |
| *Plaintiff,* § | | |
| § | **Case No. _____** | |
| **v.** § | | |
| § | | |
| **UNDERWRITERS AT LLOYD'S,** § | | |
| **LONDON, ICAT SYNDICATE 4242 AND** § | **JURY TRIAL DEMANDED** | |
| **NATIONAL FIRE & MARINE** § | | |
| **INSURANCE COMPANY** § | | |
| *Defendants.* § | | |

## PLAINTIFF'S ORIGINAL COMPLAINT

2 Hart Investments, LLC ("Plaintiff") complains of Defendants Underwriters at Lloyd's, London, ICAT Syndicate 4242 ("Lloyds") and National Fire & Marine Insurance Company ("National") (collectively, the "Defendants"), and would respectfully show as follows:

### I.
### PARTIES AND PROCESS SERVICE

1. Plaintiff is a Texas limited liability company domiciled in Texas with its principle place of business in Nueces County, Texas. All of Plaintiff's members are citizens of Texas, and therefore for purposes of diversity jurisdiction, Plaintiff is considered a citizen of Texas.

2. Defendant Lloyd's is a foreign surplus lines insurance company engaging in the business of insurance in Texas, operating for the purpose of accumulating monetary profit. Lloyd's regularly conducts the business of insurance in a systematic and continuous manner in the State of Texas. For purposes of diversity jurisdiction, Lloyd's is not a citizen of Texas. According to the insurance policy in issue, Lloyd's may be served with a Summons or a Waiver of Summons by serving its designated agent for service: Mendes & Mount, LLP, 750 7th Avenue, New York, NY 10019.

3. Defendant National is a foreign surplus lines insurance company engaging in the business of insurance in Texas, operating for the purpose of accumulating monetary profit. National regularly conducts the business of insurance in a systematic and continuous manner in the State of Texas. For purposes of diversity jurisdiction, National is not a citizen of Texas. According to the insurance policy in issue, National may be served with a Summons or a Waiver of Summons by serving its designated agent for service: Counsel, Legal Department, National Fire & Marine Insurance Company, 3024 Harney Street, Omaha, NE 68131.

## II.
## JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiff and Defendants, and the amount in controversy exceeds the sum of seventy-five thousand dollars ($75,000.00), exclusive of interests and costs.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because this action concerns real property located in Nueces County, Texas, and all or a substantial part of the events giving rise to the claim described herein occurred in Nueces County, Texas. The insurance policy at issue and of which Plaintiff is a beneficiary was to be performed in Nueces County, Texas, and the losses under the policy (including payments to be made to Plaintiff under the policy) were required to be made in Nueces County, Texas. Further, investigation, including communications to and from Defendants and Plaintiff (including telephone calls, mailings, and other communications to Plaintiff) occurred in Nueces County, Texas.

## III.
## NOTICE AND CONDITIONS PRECEDENT

6. Defendants have been provided notice, in writing, of the claims made by Plaintiff in this complaint, including Plaintiff's actual damages in the manner and form required.

7. All conditions precedent necessary to maintain this action under the policy have been performed, occurred, or have been waived by Defendants, or Defendants are otherwise estopped from raising same due to Defendants' prior breach of the insurance contract.

## IV.
## FACTS

### A. The Property and The Policy.

8. This is a claim for insurance proceeds for damages caused by Hurricane Harvey. Plaintiff owns certain real property with improvements located at 4520 Crosstown Expressway, Corpus Christi, TX 78415 (the "Property"), which was insured by an insurance policy (No. 42-7560081818-S-02) issued by Lloyd's and National (the "Policy"). The Property is a former Honda Car dealership which is currently home to a business that provides equipment to the oil and gas industry. There are two separate buildings located on the Property with low slope corrugated metal roofing.



**Figure 1: The Property**



**Figure 2: The Property**

### B. Hurricane Harvey Damage.

9. On or about August 25, 2017, Hurricane Harvey, recognized as one of the most devastating natural disasters in United States history, made landfall on the Texas coast in Aransas County as a Category 4 hurricane. Corpus Christi saw wind speeds up to 90 miles per hour. Hurricane Harvey continued to travel through the southeast part of Texas, inflicting billions of dollars in damages to private and public property. The Texas Division of Emergency Management incurred more than $439 million in costs associated with debris removal, public property damage, and police/EMS response immediately after Harvey. Texas Governor Greg Abbott has estimated that Hurricane Harvey's damages will total an historic $180 billion.



**Figure 3: Hurricane Harvey's Winds**

10. As a result of Harvey's extreme winds when it made landfall on August 25, 2017, the Property sustained significant wind damage to its exterior surfaces and roofing system. The wind forces from Hurricane Harvey caused such extensive damage to the roofing system that rain entered the building and caused interior damages. Prior to Hurricane Harvey, the roofing system was performing as intended. Below is just a sampling of the wind damage caused to the Property:





___

*2 Hart Investments, et al. v. Underwriter's at Lloyds's, et al.*     Page 6
Plaintiff's Original Complaint





### C. The Claim and Defendants' Failures to Properly Handle The Claim.

11. Yet as devastating as the physical damage was to the Property, Plaintiff felt fortunate to be protected by $650,000 in insurance coverage which Plaintiff had procured to insure the Property from this precise type of catastrophe. This sense of security, borne of a pricey contractual relationship, would prove illusory as Defendants began their investigation and handling of the claim.

12. Immediately after Hurricane Harvey, Plaintiff made a claim (claim no. ICAT-2017-V-0000013327) with Defendants and requested payment for damages to the Property covered by the Policy (the "Claim"). After Plaintiff made the Claim, Defendants failed to comply with the Policy, the Texas Insurance Code and Texas law in handling Plaintiff's claim. Further, Defendants have refused to pay all amounts due and owing under the Policy for the Claim.

13. Although Texas law provides that an insurer has a "non-delegable duty" to responsibly handle claims, delegate their duty is precisely what Defendants did. More specifically, Defendants retained the services of a third-party, ICAT Boulder Claims ("ICAT"), to administer, investigate and adjust the Claim. ICAT, in turn, made the decision to engage the services of a third-party adjusting company, Insurance Claims Adjusters, Inc. ("ICA"), and its field adjuster Dean Palmiere ("Palmiere") to assist with the investigation and adjustment of the Claim   At all material times, ICAT, ICA, Palmiere, and any other persons or entities involved with the Claim were acting as Defendants' agents in the course and scope of their agency with Defendants. Accordingly, Defendants are liable for their acts and omissions.

14. Defendants delegate their claims decisions and oversight to third-party adjusters like ICAT, ICA and Palmiere with limited oversight by Defendants. Oftentimes, claims are not even reported to the actual insurance company until a third-party administrator decides it rises to a level that

merits the insurer's attention.  In this type of absentee insurer environment, claims standards and guidelines become arbitrary and are routinely outsourced.  Adjuster training is deferred, or simply never happens.  Financial incentives are turned on their head, as the third-party administrators and adjusters, and the managers who oversee them, are compensated with bonuses and incentives tied to profitability manufactured by claim denials and underpayments.  Defendants' absentee structure is such that it is virtually impossible to comply with Texas law concerning claims handling guidelines and the prohibition on delegating these guidelines.  But for foreign surplus lines insurance entities shielded by a vacuum of regulatory oversight, delegation to a third party adjusting company such as ICAT (who, upon information and belief, has a lengthy relationship of resolving claims for Defendants accompanied by a significant financial incentive to steer claims away from covered losses, where possible) has become the new normal.

15. Defendants and their agents inspected the Property on or about September 11, 2017.  Thereafter, on November 7, 2017, ICAT, on Defendants' behalf, issued a letter entitled Partial Denial of Coverage.  The letter concluded the RCV damages to Building 1 was $6,058.97, the RCV damages to Building 2 was $4,678.65, and the RCV damage to Awnings and Canopies was $2,234.86.  The combined RCV damages totaled $12,972.48.  After application of the Policy deductible, Defendants issued payment in the amount of $734.86 for the Claim.  As described in more detail below, Defendants' and their agents grossly undervalued the Claim and the cost to repair the damages to the Property caused by Hurricane Harvey.  Plaintiff presented a claim under their Policy for Hurricane Harvey damages. It was Defendants' responsibility, not Plaintiff's, to conduct a reasonable and thorough investigation of the claim to determine the specific cause of the loss, and to accurately evaluate the cost to repair covered damage to the Property. Defendants wholly failed to do so.

16. Defendants' improper handling of the Claim subjects them to liability pursuant to TEX. INS. CODE § 541.001, *et seq.* and TEX. INS. CODE § 542.051, *et seq*. Defendants violated TEX. INS. CODE § 541.060(a) and engaged in Unfair Settlement Practices by:

   a) Misrepresenting to Plaintiff material facts or policy provisions relating to the coverage at issue. Specifically, Defendants represented to Plaintiff that the cost to repair the covered Hurricane Harvey damage to the Property is $12,972.48, when the actual cost is over ten times higher (as explained below). Rather than fully compensate Plaintiff for its losses, Defendants failed to conduct a reasonable and thorough investigation of the Claim, and as a result grossly undervalued the amount of Plaintiff's covered losses.

   b) Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the Claim, even though Defendants' liability under the Policy was reasonably clear. More specifically, even though Defendants' liability under the Policy was reasonably clear, Defendants contended the cost to repair the covered damages to the Property was $12,972.48, when in fact Plaintiff's actual damages far exceed that amount. Defendants acted in bad faith when they ignored the obvious substantial amount of damages to the Property, conducted a substandard investigation, and grossly undervalued the Claim.

   c) Refusing to pay Plaintiff's Claim without conducting a reasonable investigation with respect to the Claim. Defendants' investigation was clearly unreasonable because it failed to determine the full amount of Plaintiff's damages, even though the damages were obvious and the true amount of cost to repair the damages was readily ascertainable. Defendants' investigation was additionally unreasonable because it failed to use the appropriate experts and consultants to thoroughly investigate the Claim. Had they done so, Defendants should have determined the full extent of the damage caused to the Property by Hurricane Harvey, and that such damages are covered by the Policy.

Each of the foregoing unfair settlement practices was completed knowingly by Defendants and was a producing cause of Plaintiff's injuries and damages.

17. Further, Defendants violated the prompt payment of claims provisions of TEX. INS. CODE § 542.051, et seq. by delaying payment of the Claim following Defendants' receipt of all items,

statements, and forms reasonably requested and required, longer than the amount of time provided by TEX. INS. CODE § 542.058. Defendants' claim decision letter dated November 7, 2017 demonstrates that they were in receipt of all items, statements, and forms that they would need to make a claim decision on that date. Accordingly, because more than 75 days have passed from November 7, 2017 without full payment on the Claim, Defendants have violated the time limits of TEX. INS. CODE §§ 542.058 and 542.059.

### D. Plaintiff is Forced to Adjust Its Own Claim.

18. After Defendants failed to reasonably and thoroughly investigate the Claim and grossly undervalued the Claim, Plaintiff was forced to retain attorneys and its own expert to assist with the Claim. Plaintiff hired the Poynor Group to investigate the Claim. The Poynor Group consists of general contractors, estimators, and insurance claim specialists that offer commercial and residential design and building services, remodeling, painting, roofing, construction, and property maintenance for commercial and residential structures all over Texas. The Poynor Group investigated the Claim and determined that the approximate cost to repair the damage caused to the Property by Hurricane Harvey is $168,949.43. This amount is exclusive of the damage to the building canopy. All of the repair costs identified by the Poynor Group are covered under the terms and conditions of the Policy.

### E. Plaintiff's Notice Letter.

19. On June 1, 2017, Governor Abbot signed House Bill 1774 into law as Section 542A of the Texas Insurance Code. This new law was sponsored by approximately sixty state representatives and senators and contains important consumer protections against a variety of unscrupulous practices. Section 542A.003 in particular requires detailed, comprehensive pre-suit notice that is intended to make the claims and litigation processes more transparent and potentially even avoid

unnecessary lawsuits. Upon receiving notice, an insurer has a right to conduct an inspection, and even make an offer to avoid litigation. When utilized properly, Section 542A should assist business consumers like Plaintiff to avoid protracted litigation over a clear claim.

20. On June 25, 2018, Plaintiff (through its counsel) sent Defendants a letter notifying Defendants of Plaintiff's claims against Defendants arising under Chapters 541 and 542 of the Texas Insurance Code, as required by TEX. INS. CODE §§ 541.154 and 542A.003 (the "Notice Letter"). The Notice Letter specifically described Defendants' violations of the Texas Insurance Code, using language substantially identical to the allegations contained in this pleading. Further, the Notice Letter provided a comprehensive outline of Plaintiff's claims and damages, and quantified Plaintiff's losses on the Claim (by presenting the detailed expert report and photos from the Poynor Group).

21. Unfortunately, although Plaintiff provided the requisite notice, Defendants refused to make any additional undisputed payments under the terms and conditions of the Policy, forcing Plaintiff to institute this lawsuit.

### F. Defendants' Insurance Code Violations.

22. Defendants failed to perform their contractual duties to adequately compensate Plaintiff under the terms of the Policy. Specifically, Defendants refused to pay for damages owed under the Policy, although due demand was made for proceeds to be paid in an amount sufficient to cover the damaged property and all conditions precedent to recovery upon the Policy in question had been satisfied by Plaintiff. Defendants' conduct constitutes a breach of the insurance contract between Defendants and Plaintiff.

23. Defendants misrepresented to Plaintiff that damage to the Property was not covered under the Policy, even though the damage was covered by the Policy. Defendants' conduct constitutes a violation of TEX. INS. CODE § 541.060(a)(1).

24. Defendants failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff's Claim, when Defendants' liability was reasonably clear. Defendants' conduct constitutes a violation of TEX. INS. CODE § 541.060(a)(2)(a).

25. Defendants failed to explain to Plaintiff the reasons for their offer of an inadequate settlement/claim denial. Specifically, Defendants failed to offer Plaintiff adequate compensation, without any explanation why full payment was not being made. Furthermore, Defendants did not communicate that any future settlements or payments would be forthcoming to pay for the entire loss covered under the Policy, nor did Defendants provide any explanation for the failure to adequately settle Plaintiff's claim. Defendants' conduct constitutes a violation of TEX. INS. CODE § 541.060(a)(3).

26. Defendants failed to affirm or deny coverage of Plaintiff's claim within a reasonable time. Specifically, Plaintiff did not receive timely indication of acceptance or rejection, regarding the full and entire claim, in writing from Defendants. Defendants' conduct constitutes a violation of TEX. INS. CODE § 541.060(a)(4)(A).

27. Defendants refused to fully compensate Plaintiff for the Claim without conducting a reasonable investigation of the Claim. Rather, Defendants performed an unreasonable outcome-oriented investigation of Plaintiff's Claim, which resulted in a biased, unfair and inequitable evaluation of Plaintiff's Claim. Defendants' conduct constitutes a violation of TEX. INS. CODE § 541.060(a)(7).

28. Defendants failed to meet its obligations under the Texas Insurance Code regarding the timely acknowledgement of Plaintiff's Claim, beginning an investigation of Plaintiff's Claim and requesting all information reasonably necessary to investigate Plaintiff's Claim within the statutorily mandated time of receiving notice of Plaintiff's claim. Defendants' conduct constitutes a violation of TEX. INS. CODE § 542.055.

29. Defendants failed to accept or deny Plaintiff's full and entire claim within the statutorily mandated time of receiving all necessary information. Defendants' conduct constitutes a violation of TEX. INS. CODE § 542.056.

30. Defendants failed to meet its obligations under the Texas Insurance Code regarding payment of claims without delay. Specifically, Defendants have delayed full payment of Plaintiff's Claim longer than allowed and, to date, Plaintiff has not yet received full payment for Plaintiff's Claim. Defendants' conduct constitutes a violation of TEX. INS. CODE § 542.058.

31. From and after the time Plaintiff's Claim was presented to Defendants, the liability of Defendants to pay the full Claim in accordance with the terms of the Policy was reasonably clear. However, Defendants have refused to pay Plaintiff in full, despite there being no basis whatsoever on which a reasonable insurance company would have relied on to deny the full payment. Defendants' conduct constitutes a breach of the common law duty of good faith and fair dealing.

32. Defendants knowingly or recklessly made false representations, as described above, as to material facts and/or knowingly concealed material information from Plaintiff.

33. Because of Defendants' wrongful acts and omissions, Plaintiff was forced to retain the professional services of the law firm who is representing Plaintiff with respect to these causes of action.

34. In summary, Defendants have hailed to comply with the Policy, the Texas Insurance Code, and Texas Law in handling the Claim, and has failed to pay all amounts due and owing under the Policy for the Claim. Defendants and their representatives failed to perform a thorough investigation of Plaintiff's Claim, failed to employ appropriate or qualified consultants to evaluate the damages, delayed resolution of the Claim under Texas law, and misrepresented applicable scopes of damages as well as the terms of the Policy. Further, Defendants' outcome-oriented investigation of Plaintiff's Claim resulted in a biased, unfair, and inequitable evaluation of Plaintiff's loss intended to construct a pretextual basis for the denial or underpayment of Plaintiff's Claim. Adjusters employed by Defendants violated the law through their own acts and omissions in the handling of the Claim. Because of these violations of law and wrongful conduct, Plaintiff has sustained and continues to sustain significant damages, including but not limited to property damage, diminution of property value, attorney's fees, financial harm, and other consequential damages.

## V.
## CAUSES OF ACTION

35. Plaintiff incorporates all of the aforementioned facts into its causes of action below for all purposes. Defendants are liable to Plaintiff for breach of contract, as well as intentional violations of the Texas Insurance Code and breach of the common law duty of good faith and fair dealing.

### A. Breach of Contract.

36. The Policy is a valid, binding and enforceable contract between Plaintiff and Defendants. Defendants breached the contract by refusing to perform their obligations under the terms of the Policy and pursuant to Texas law. Defendants' breach proximately caused Plaintiff injuries and damages. All conditions precedent required under the Policy have been performed, excused,

waived or otherwise satisfied by Plaintiff, or Defendants are estopped from raising the issue due to Defendants' prior breach of the insurance contract.

### B. Noncompliance With Texas Insurance Code: Unfair Settlement Practices.

37. The conduct, acts, and/or omissions by Defendants constituted Unfair Settlement Practices pursuant to TEX. INS. CODE. § 541.060(a). All violations under this article are made actionable by TEX. INS. CODE § 541.151.

38. Defendants' unfair settlement practice, as described above, of misrepresenting to Plaintiff material facts relating to the coverage at issue, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE § 541.060(a)(1).

39. Defendants' unfair settlement practice, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim, even though Defendants' liability under the Policy was reasonably clear, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE § 541.060(a)(2)(A).

40. Defendants' unfair settlement practice, as described above, of failing to promptly provide Plaintiff with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for its offer of a compromise settlement of the claim, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE § 541.060(a)(3).

41. Defendants' unfair settlement practice, as described above, of failing within a reasonable time to affirm or deny coverage of the claim to Plaintiff or to submit a reservation of rights to Plaintiff, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE § 541.060(a)(4).

42. Defendants' unfair settlement practice, as described above, of refusing to pay Plaintiff's claim without conducting a reasonable investigation, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE § 541.060(a)(7).

43. Defendants' conduct described above compelled Plaintiff to initiate a lawsuit to recover amounts due under its policy by offering substantially less than the amount ultimately recovered. Defendants' continued failure to properly handle the Claim compelled Plaintiff to file suit. TEX. INS. CODE § 542.003(b)(5).

### C. Prompt Payment of Claims Violations.

44. The Claim is a claim under an insurance policy with Defendants of which Plaintiff gave Defendants notice. Defendants are liable for the Claim. Defendant violated the prompt payment of claims provisions of TEX. INS. CODE § 542.051, *et seq.* by:

   a) Failing to acknowledge receipt of the Claim, commence investigation of the Claim, and/or request from Plaintiff all items, statements, and forms that Defendant reasonably believed would be required within the time constraints provided by TEX. INS. CODE § 542.055;

   b) Failing to notify Plaintiff in writing of its acceptance or rejection of the Claim within the applicable time constraints provided by TEX. INS. CODE § 542.056; and/or by

   c) Delaying payment of the Claim following Defendants' receipt of all items, statements, and forms reasonably requested and required, longer than the amount of time provided by TEX. INS. CODE § 542.058.

45. Defendants' violations of these prompt payment of claims provisions of the Texas Insurance Code are made actionable by TEX. INS. CODE § 542.060.

### D. Breach of The Duty of Good Faith and Fair Dealing.

46. Defendant breached the common law duty of good faith and fair dealing owed to Plaintiff by denying or delaying payment on the Claim when Defendants knew or should have known that

their liability to Plaintiff was reasonably clear. Defendants' conduct proximately caused Plaintiff injuries and damages.

## VI.
## KNOWLEDGE

47. Defendants' acts described above, together and singularly, was done "knowingly" as that term is used in the Texas Insurance Code and was a producing cause of Plaintiff's damages described herein.

## VII.
## DAMAGES

48. Plaintiff will show that all the aforementioned acts, taken together or singularly, constitute the producing causes of the damages sustained by Plaintiff.

49. For breach of contract, Plaintiff is entitled to regain the benefit of Plaintiff's bargain, which is the amount of Plaintiff's Claim, together with attorneys' fees.

50. For noncompliance with the Texas Insurance Code, Unfair Settlement Practices, Plaintiff is entitled to actual damages, which include but are not limited to, the loss of the benefits that should have been paid pursuant to the Policy, court costs and attorneys' fees. For knowing conduct of the acts complained of, Plaintiff asks for three times Plaintiff's actual damages. TEX. INS. CODE § 541.152.

51. For noncompliance with Texas Insurance Code, Prompt Payment of Claims, Plaintiff is entitled to the amount of Plaintiff's Claim, as well as a statutory interest penalty calculated per annum based on the amount of Plaintiff's Claim, and with attorney's fees. TEX. INS. CODE § 542.060.

52. For breach of the common law duty of good faith and fair dealing, Plaintiff is entitled to compensatory damages, including all forms of loss resulting from the insurer's breach of duty,

such as additional costs, economic hardship, losses due to nonpayment of the amount the insurer owed, and exemplary damages.

53. For the prosecution and collection of this claim, Plaintiff has been compelled to engage the services of the law firm whose names are subscribed to this pleading. Therefore, Plaintiff is entitled to recover a sum for the reasonable and necessary services of Plaintiff's attorneys in the preparation and trial of this action, including any appeals to the Court of Appeals and/or the Supreme Court of Texas.

## VIII.
## JURY DEMAND

54. Plaintiff hereby requests a jury trial and tenders the appropriate jury fee.

## IX.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that upon trial hereof, Plaintiff has and recovers such sums as would reasonably and justly compensate Plaintiff in accordance with the rules of law and procedure, both as to actual damages, statutory penalties and interest, treble damages under the Texas Insurance Code and all punitive and exemplary damages as may be found. In addition, Plaintiff requests the award of attorney's fees for the trial and any appeal of this case, for all costs of Court on their behalf expended, for pre-judgment and post-judgment interest as allowed by law, and for any other and further relief, either at law or in equity, to which Plaintiff may show itself to be justly entitled.

Respectfully submitted,

**LUNDQUIST LAW FIRM**

*/s/ William W. Lundquist*
William W. Lundquist
So. Dist. Texas No. 38019
Texas Bar No.: 24041369
2402 Dunlavy St., Suite 300
Houston, Texas 77006
Will@LundquistLawFirm.com
Telephone: (832) 255-3014
Facsimile: (713) 583-5586

ATTORNEY-IN-CHARGE FOR PLAINTIFF

**OF COUNSEL:**

Austin W. Anderson
So. Dist. Texas No. 777114
Texas Bar No. 24045189

ANDERSON ALEXANDER, PLLC
819 N. Upper Broadway
Corpus Christi, Texas 78401
Austin@a2xlaw.com
Telephone: (361) 452-1279
Facsimile: (361) 452-1284

*2 Hart Investments, et al. v. Underwriter's at Lloyds's, et al.*  Page 20
Plaintiff's Original Complaint